**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE DOCUMENT SUBPOENA directed to Nonparty JAMES FALLON and issued in connection with<br><br>*Yuga Labs, Inc. v. Ripps et al.*, No. 2:22-cv-04355-JFW-JEM (C.D. Cal.)<br><br>(Pending in the United States District Court for the Central District of California) | MISCELLANEOUS CASE NO: |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
NONPARTY JAMES FALLON TO QUASH DOCUMENT
<u>SUBPOENA ISSUED BY RYDER RIPPS AND JEREMY CAHEN</u>**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Counsel to Nonparty James Fallon*

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

    A.     The *Ripps* Litigation ................................................................................................2

    B.     The *Real* Litigation .................................................................................................5

    C.     The Subpoena and the Discovery Sought From Mr. Fallon .................................6

LEGAL STANDARD......................................................................................................................6

ARGUMENT ...................................................................................................................................7

        I.     THE SUBPOENA SEEKS IRRELEVANT DOCUMENTS .......................7

        II.    THE SUBPOENA IMPOSES AN UNDUE BURDEN............................10

        III.   THE SUBPOENA IS PROCEDURALLY DEFICIENT ..........................13

CONCLUSION..............................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Alcon Vision, LLC v. Allied Vision Grp., Inc.*,
   2019 WL 4242040 (S.D.N.Y. Sept. 6, 2019) ................................................................. 10, 11

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
   2020 WL 4700910 (S.D.N.Y. Aug. 13, 2020) ............................................................... 11, 12

*Anstead v. Virginia Mason Med. Ctr.*,
   2023 WL 34505 (W.D. Wash. Jan. 4, 2023) ....................................................................... 11

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2003 WL 22227945 (S.D.N.Y. Sept. 26, 2003) .................................................................. 12

*ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*,
   2003 WL 1877227 (S.D.N.Y. Apr. 9, 2003) ....................................................................... 12

*Barney v. Zimmer Biomet Holdings, Inc.*,
   2018 WL 11407332 (N.D. Ind. Aug. 21, 2018) .................................................................. 12

*Bouchard Transp. Co. v. Associated Elec. & Gas Ins. Servs. Ltd.*,
   2015 WL 6741852 (S.D.N.Y. Nov. 4, 2015). ........................................................................ 6

*Brown v. Hendler*,
   2011 WL 321139 (S.D.N.Y. Jan. 31, 2011) ........................................................................ 11

*Buettgen v. Harless*,
   2010 WL 2573463 (N.D. Tex. June 25, 2010) .................................................................... 13

*Burns v. Bank of Am.*,
   2007 WL 1589437 (S.D.N.Y. June 4, 2007) ....................................................................... 14

*In re Cardinal Health*,
   365 F. Supp. 2d 866 (S.D. Ohio 2005) ................................................................................ 12

*Donald J. Ulrich Assocs., Inc. v. Bill Forge Priv. Ltd.*,
   2018 WL 6061083 (E.D. Mich. Nov. 20, 2018) .................................................................. 12

*In re Dot Hill Sys. Corp.*,
   594 F. Supp. 2d 1150 (S.D. Cal. Sept. 2, 2008) .................................................................. 13

*Dunlop-McCullen v. Loc. 1-S, AFL-CIO-CLC*,
   149 F.3d 85 (2d Cir. 1998) .................................................................................................... 9

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
 82 F. Supp. 2d 126 (S.D.N.Y. 1999) ................................................................................... 10

*Idelle Labs, Ltd. v. Reis*,
 2014 WL 12577036 (S.D. Ohio Apr. 24, 2014) ................................................................. 14

*In re InterBank Funding Corp.*,
 310 B.R. 238 (Bankr. S.D.N.Y. 2004) ........................................................................ 13, 14

*Jam Indus. USA, LLC v. Gibson Brands, Inc.*,
 2020 WL 4003280 (S.D.N.Y. July 15, 2020) .................................................................. 7, 10

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
 304 F.3d 829 (9th Cir. 2002) ................................................................................................ 9

*Kaiser Trading Co. v. Assoc. Metals & Mins. Corp.*,
 321 F. Supp. 923 (N.D. Cal. 1970) ...................................................................................... 9

*Leal v. Paramount Restaurants Grp., Inc.*,
 2013 WL 500447 (D. Colo. Feb. 11, 2013) ....................................................................... 13

*Mackey v. IDT Energy, Inc.*,
 2019 WL 2004280 (S.D.N.Y. May 7, 2019) ........................................................................ 7

*Night Hawk Ltd. v. Briarpatch Ltd.*,
 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) .................................................................... 7

*PenneCom B.V. v. Merrill Lynch & Co.*,
 372 F.3d 488 (2d Cir. 2004) ............................................................................................ 8, 9

*Pom Wonderful LLC v. Welch Foods, Inc.*,
 737 F. Supp. 2d 1105 (C.D. Cal. 2010) ............................................................................... 9

*Republic Molding Corp. v. B. W. Photo Utils.*,
 319 F.2d 347 (9th Cir. 1963) ........................................................................................... 8, 9

*S. California Darts Ass'n v. Zaffina*,
 762 F.3d 921 (9th Cir. 2014) .......................................................................................... 9, 10

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
 96 F.3d 1217 (9th Cir.), *as modified*, 97 F.3d 1460 (9th Cir. 1996). ............................... 10

*Warner Bros., Inc. v. Gay Toys, Inc.*,
 724 F.2d 327 (2d Cir. 1983) ............................................................................................... 10

## STATUTES & RULES

15 U.S.C. § 78u-4(b)(3)(B) ........................................................................................................ 5

Fed. R. Civ. P. 26 .............................................................................................................. 7

Fed. R. Civ. P. 26(b)(1) ..................................................................................................... 7

Fed. R. Civ. P. 26(b)(2)(C) ............................................................................................. 11

Fed. R. Civ. P. 45 .............................................................................................................. 6

Fed. R. Civ. P. 45(a)(3) ............................................................................................. 13, 14

Fed. R. Civ. P. 45(d)(1) ..................................................................................................... 6

Fed. R. Civ. P. 45(d)(3) ..................................................................................................... 1

Fed. R. Civ. P. 45(d)(3)(A) ............................................................................................... 6

Fed. R. Civ. P. 45(d)(3)(A)(i) ......................................................................................... 11

## OTHER AUTHORITIES

Private Securities Litigation Reform Act of 1995 ("PSLRA") ............................................. *passim*

Sec. 10(b) of the Exch. Act ................................................................................................. 5

Nonparty James Fallon respectfully submits this memorandum of law in support of his motion ("Motion"), pursuant to Fed. R. Civ. P. 45(d)(3), to quash the subpoena served by Ryder Ripps and Jeremy Cahen on February 24, 2023 ("Subpoena") in connection with *Yuga Labs, Inc. v. Ripps et al.*, No. 2:22-cv-04355-JFW-JEM (C.D. Cal.) ("*Ripps* Litigation").

## INTRODUCTION

The *Ripps* Litigation is a trademark dispute between Yuga Labs, Inc. ("Yuga") as plaintiff and Ripps and Cahen as defendants. In its complaint, Yuga asserts claims for trademark infringement, false advertising, and unfair competition against Ripps and Cahen concerning a nonfungible token ("NFT") collection created by Yuga and known as the "Bored Ape Yacht Club." In particular, Yuga contends that Ripps and Cahen misappropriated Yuga's trademarks to falsely market their own NFTs as equivalent or connected to those of Yuga.

Mr. Fallon has no connection to their dispute. He is not a party to the *Ripps* Litigation and has never met or interacted with Ripps and Cahen. He has no involvement in or knowledge about any act, transaction, or occurrence giving rise to the claims that Yuga is asserting in that proceeding. Nevertheless, Ripps and Cahen have needlessly burdened Mr. Fallon with the Subpoena, demanding the expedited production of irrelevant documents that they can—and are currently trying to—obtain from Yuga (and its alleged agent) in the *Ripps* Litigation. Indeed, Mr. Fallon's only alleged connection to Yuga is that he acquired a Bored Ape Yacht Club NFT and mentioned it on two episodes of The Tonight Show. For that, Mr. Fallon—together with over a dozen other celebrities—is a co-defendant with Yuga in a separate and unrelated securities litigation, in which all discovery is currently stayed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), pending the filing and resolution of the defendants' anticipated motions to dismiss.

The Subpoena should be quashed for at least three independent reasons. First, the materials the Subpoena seeks are irrelevant to the *Ripps* Litigation. Second, conducting an expedited search and producing responsive documents (in six business days and approximately ten days total) for the categories of materials the Subpoena calls for—all of which are subject to the PSLRA discovery stay in the unrelated securities litigation in which Mr. Fallon is a named defendant—would place an undue burden on Mr. Fallon, particularly because Ripps and Cahen have already sought the same materials from Yuga or other third parties. Third, the Subpoena is procedurally deficient because it is not validly signed.

In short, the Subpoena is an unwarranted fishing expedition for irrelevant material that Ripps and Cahen could and should have gotten from their adversary (or its agent), rather than seeking them on an emergency basis from a nonparty such as Mr. Fallon. For these reasons and those set forth below, Mr. Fallon respectfully submits that the Subpoena should be quashed.

## BACKGROUND

### A. The *Ripps* Litigation

Yuga created an NFT collection called the Bored Ape Yacht Club ("BAYC"). (Seshens Decl. Ex. 2 at ¶ 1.)[1] On June 24, 2022, Yuga commenced the *Ripps* Litigation in the Central District of California against Ripps, a self-proclaimed "conceptual artist," and his business partner, Cahen. (*Id.* at ¶ 2.) Yuga's complaint alleges that Ripps and Cahen intentionally infringed Yuga's BAYC-related trademarks through a "copycat" NFT collection created by Ripps and called the "Ryder Ripps Bored Ape Yacht Club" ("RR/BAYC"). (*Id.* ¶¶ 2–3, 33–47,

---

[1] "Seshens Decl. Ex. __" refers to exhibits submitted in connection with the Declaration of Dana M. Seshens, dated March 6, 2023, and filed contemporaneously herewith.

2

86–98.) Yuga asserts claims for, among other things, trademark infringement, false advertising, and unfair competition under federal, California, and common law. (*Id*. ¶¶ 60–161.)

Ripps and Cahen moved to dismiss the complaint and to strike the state law claims pursuant to California's anti-SLAPP statute. (Seshens Decl. Ex. 3.) They asserted that the litigation was "an attempt to silence" Ripps, who created the RR/BAYC as a "satirical" critique of Yuga and the BAYC NFTs—which Ripps and Cahen claim are "systematically embedded with dog whistles common among neo-Nazis, alt-right groups, and racist [websites]." (*Id*. at 1, 3.)

The court disagreed and denied Ripps and Cahen's motion in its entirety, except that it dismissed Yuga's unjust enrichment claim without prejudice. (Seshens Decl. Ex. 4.) In its order, the court concluded that Ripps engaged in "commercial activities designed to sell infringing products" and the RR/BAYC "does not constitute an expressive artistic work protected by the First Amendment." (*Id*. at 6–7.) Indeed, the court determined that the "sale of RR/BAYC NFTs is no more artistic than the sale of a counterfeit handbag." (*Id*. at 7.) The Court held that Ripps and Cahen's use of Yuga's BAYC trademarks is not artistically relevant to their "art" and is explicitly misleading to consumers, and that Ripps and Cahen cannot rely on a fair use defense. (*Id*. at 7–9.)[2]

Ripps and Cahen answered the complaint on December 27, 2022, asserting several counterclaims and defenses, including "unclean hands." (Seshens Decl. Ex. 5.) As alleged, the crux of this defense is that Yuga engaged in "various unlawful activities associated with the sale

---

[2] Ripps and Cahen appealed the denial of their anti-SLAPP motion to the Ninth Circuit. (Seshens Decl. Ex. 6.) They then moved the district court overseeing the *Ripps* Litigation to stay the matter as to Yuga's federal law causes of action pending the outcome of the appeal; the court has not yet ruled on that motion. (Seshens Decl. Ex. 7.)

and promotion of BAYC NFTs including Yuga's misuse of BAYC NFTs as securities, undisclosed compensation for endorsements from celebrities, and/or unlawful acts directed towards the Defendants." (*Id*. at 26.)  These allegations, on their face, have nothing to do with the RR/BAYC NFTs marketed by Ripps and Cahen, or Yuga's BAYC trademarks that Ripps and Cahen are accused of infringing.

The *Ripps* court entered the operative scheduling order in the case on October 21, 2022. (Seshens Decl. Ex. 8.)  That order set April 3, 2023 as the discovery cutoff and April 17, 2023 as the last day for motions to be heard.  (*Id*. at 35.)  Based on the docket, the parties have engaged in active discovery and substantial motion practice since the fall of 2022.  Ripps and Cahen have filed several motions to compel and *ex parte* applications concerning Yuga's production of documents and other information.  (*See Ripps* Litigation ECF Nos. 69, 103, 108, 115.)  In one of these motions, they moved to compel Yuga to respond to their 30th and 31st requests for production, which sought all documents and communications relating to:

> 30.  . . . Yuga's cooperation with third parties aimed at popularizing BAYC NFTs, including but not limited to entities such as MoonPay.
>
> and
>
> 31.  . . . any agreements or efforts into agreements in which a BAYC NFT is given, exchanged, or sold to a celebrity, influencer, or any other public person, including but not limited to any non-disclosure agreements or arrangements with third parties/entities in furtherance of giving, exchanging, or selling a BAYC NFT to celebrity, influencer, or any other public person.

(Seshens Decl. Ex. 10 at 27–28.)  Ripps and Cahen's motion to compel the production of these materials remains pending.

Based on the meet-and-confer process that preceded the filing of this Motion, counsel for Mr. Fallon understands that Ripps and Cahen have also sought, and are in the process of

obtaining, discovery from Yuga's alleged agent (Hollywood talent manager Guy Oseary) with respect to the sale and marketing of BAYC NFTs to celebrities (including Mr. Fallon). (Seshens Decl. ¶ 16.)

### B. The *Real* Litigation

Entirely unrelated to the trademark infringement dispute at the center of the *Ripps* Litigation, purchasers of BAYC NFTs and other digital assets created by Yuga Labs filed a putative federal securities and consumer class action in the Central District of California on December 8, 2022, captioned *Real v. Yuga Labs, Inc.*, No. 2:22-cv-08909-FMO-PLA ("*Real* Litigation"). The *Real* plaintiffs sued, among other parties, Yuga, MoonPay (a cryptocurrency payments company), certain of Yuga's officers and affiliates, Oseary, and over a dozen celebrities, including Mr. Fallon.[3] (Seshens Decl. Ex. 11 at ¶¶ 12–49.) The complaint alleges a scheme to "misleadingly promote and sell" various digital assets, including Yuga's BAYC NFTs, which the plaintiffs contend are securities. (*Id.* at ¶ 3.) As to Mr. Fallon, the complaint alleges that he acted in concert with Yuga and other defendants to promote his BAYC NFT and MoonPay on two Tonight Show segments, as well as over social media. (*Id.* ¶¶ 104–09, 125–130.) Because the *Real* Litigation asserts claims under Section 10(b) of the Securities Exchange Act of 1934, it is governed by the PSLRA, which stays all discovery during the pendency of a motion to dismiss. (15 U.S.C. § 78u-4(b)(3)(B); Seshens Decl. Exs. 12–13.). No lead plaintiff has been appointed yet in the *Real* Litigation, but, once that happens, defendants anticipate filing a motion to dismiss.

---

[3] In the *Real* Litigation, Yuga and Mr. Oseary are represented by the same counsel. (Seshens Decl. Ex. 14.)

### C. The Subpoena and the Discovery Sought From Mr. Fallon

Counsel for Ripps and Cahen first contacted Mr. Fallon's counsel about the Subpoena on January 12, 2023. (Seshens Decl. Ex. 15.) Counsel then met and conferred about the Subpoena by videoconference on February 6, 2023 and by email dated February 24, 2023, the same date on which the Subpoena was served. (Seshens Decl. Exs. 1, 16; Seshens Decl. ¶ 16.) The Subpoena is signed on behalf of Ripps and Cahen by Louis W. Tompros, an attorney who, based on his law firm biography, does not appear to be admitted to the bar of this Court and who is not admitted to practice law in the states of New York, Vermont, and Connecticut (i.e., the states in which admission to practice law renders an attorney eligible to be admitted to this Court under Local Rule 1.3). (*See* Seshens Decl. Exs. 1, 17–20.) The Subpoena seeks from Mr. Fallon discovery that is remarkably similar to what Ripps and Cahen already seek from Yuga:

> documents and/or electronically stored information constituting, referring to, or evidencing marketing for the Bored Ape Yacht Club ("BAYC"), confusion between any BAYC NFT and any other NFT, and/or the circumstances under which [Mr. Fallon] came to own BAYC NFT #599 and any other BAYC NFT.

The Subpoena demands compliance by 9:00 a.m. on March 7, 2023.

### LEGAL STANDARD

Parties issuing a Rule 45 subpoena must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Upon a timely motion, a court "*must* quash or modify a subpoena that . . . fails to allow a reasonable time to comply . . . or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). District courts have "broad discretion over the decision to quash a subpoena." *Bouchard Transp. Co. v. Assoc. Elec. & Gas Ins. Servs. Ltd.*, 2015 WL 6741852, at *1 (S.D.N.Y. Nov. 4, 2015). Courts in this district routinely quash or modify subpoena requests for irrelevant

documents. *See, e.g.*, *Mackey v. IDT Energy, Inc.*, 2019 WL 2004280, at *5–*6 (S.D.N.Y. May 7, 2019); *Jam Indus. USA, LLC v. Gibson Brands, Inc.*, 2020 WL 4003280, at *4 (S.D.N.Y. July 15, 2020).

## ARGUMENT

The Subpoena should be quashed because it seeks materials wholly irrelevant to the *Ripps* Litigation from which it arises. Moreover, conducting an expedited search for the requested materials would unduly burden Mr. Fallon, particularly given that Ripps and Cahen can just as easily get the same documents from Yuga or other third parties, including its alleged agent with respect to the BAYC NFTs. This is especially so considering that the materials sought are subject to the statutory PSLRA discovery stay in the unrelated *Real* Litigation. The Subpoena further should be quashed for the independent reason that it is procedurally improper.

### I. THE SUBPOENA SEEKS IRRELEVANT DOCUMENTS

Ripps and Cahen, as the serving parties, fail to satisfy their burden of demonstrating that "the information sought is relevant and material to the allegations and claims at issue in the" *Ripps* Litigation. *Mackey*, 2019 WL 2004280, at *3 (quoting *Night Hawk Ltd. v. Briarpatch Ltd.*, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)). "The relevance standards set out in Federal Rule of Civil Procedure 26(b)(1) apply to discovery sought from non-parties," *Mackey*, 2019 WL 2004280, at *3, and therefore limit subpoenaed discovery to documents that are "relevant to any party's claim or defense and proportional to the needs of the case," considering, among other things, the burden imposed, Fed. R. Civ. P. 26(b)(1).

The Subpoena fails to pass muster under Rule 26. The *Ripps* Litigation concerns Yuga's claims that Ripps and Cahen infringed its BAYC trademarks and engaged in unfair competition by selling a "collection of NFTs that point to the same online digital images as the BAYC

7

collection." (Seshens Decl. Ex. 4 at 6–7.) How Mr. Fallon acquired a BAYC NFT has nothing to do with these claims. Nor, for that matter, does the manner in which Yuga marketed its BAYC NFTs—as opposed to how Ripps and Cahen marketed *their* alleged "copycat" RR/BAYC collection. (*See, e.g.*, Seshens Decl. Ex. 2 ¶¶ 33–34, 52.) In all events, whether the BAYC NFTs are similar to other NFTs, or whether anyone in the market was confused about that, is entirely unrelated to Mr. Fallon.

Based on the meet-and-confer process, counsel for Mr. Fallon expects Ripps and Cahen to contend that the Subpoena seeks documents relevant to their "unclean hands" defense (asserted only *after* the court rejected their First Amendment defense and the *Real* Litigation was filed).[4] According to Ripps and Cahen, this defense arises out of "unlawful activities associated with the sale and promotion of BAYC NFTs including *Yuga's* misuse of BAYC NFTs as securities [and *Yuga's*] undisclosed compensation for endorsements from celebrities." (Seshens Decl. Ex. 5 at 26 (emphasis added).) But the discovery sought by the Subpoena cannot bear on any colorable unclean hands defense. Whether and how *Mr. Fallon* may have come to possess a BAYC NFT, or communications concerning how Yuga markets BAYC NFTs, is unrelated to whether *Yuga Labs* acted in such an inequitable manner in connection with the subject matter of the *Ripps* Litigation that Yuga should be denied relief on its claims. *See Republic Molding Corp. v. B. W. Photo Utils.*, 319 F.2d 347, 349–52 (9th Cir. 1963) (stating that the doctrine does not operate to deny relief due to "extraneous transgressions"); *accord PenneCom B.V. v. Merrill*

---

[4] As Ripps and Cahen have acknowledged, the allegations made in the *Real* Litigation are animating their pursuit of discovery concerning the subject matter of that case. (*See* Seshens Decl. Ex. 9 at 4 (asserting that "[g]iven the class action lawsuit against Yuga, it is clear that [Yuga should possess] significant responsive materials [to Ripps and Cahen's 30th and 31st requests for production], including through Guy Oseary").)

*Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (emphasizing the need for a direct connection to the "subject matter in litigation").

Indeed, Ripps and Cahen's "unclean hands" defense appears to rely on an overbroad theory that lacks the requisite nexus to the underlying conduct in *Ripps*. "[U]nclean hands" do not flow from "misconduct in the abstract, unrelated to the claim to which it is asserted as a defense." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) (quoting *Republic Molding*, 319 F.2d at 349); *see also Dunlop-McCullen v. Loc. 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998). Rather, the defense is "qualified by the requirement that the party against whom the doctrine is sought to be invoked directly 'infected' the actual cause of action before the court, and is not merely guilty of unrelated improper past conduct." *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110 (C.D. Cal. 2010) (internal quotation omitted); *see also Kaiser Trading Co. v. Assoc. Metals & Mins. Corp.*, 321 F. Supp. 923, 936 (N.D. Cal. 1970) ("The misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants.").

None of the discovery sought from Mr. Fallon has any bearing on alleged inequitable conduct undertaken by Yuga Labs with respect to its trademark infringement and related claims against Ripps and Cahen. More specifically, Yuga's alleged violations of federal securities laws or state consumer protection laws through the sale and marketing of BAYC NFTs—allegations that form the basis for the claims asserted in the *Real* Litigation—lack any meaningful nexus to Yuga's claims in the *Ripps* Litigation and therefore are irrelevant. *See, e.g., S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 932–33 (9th Cir. 2014) (rejecting unclean hands defense in

9

trademark infringement case because the "misconduct alleged . . . [did] not bear any 'immediate and necessary relation' to the manner in which [the plaintiff] acquired its rights or to the equities of [the] case"); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999) (citing *Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 334 (2d Cir. 1983)) (explaining that the "unclean hands defense does not permit defendants to raise all of plaintiff's alleged inequitable conduct," but rather only conduct related to the "*acquisition or use* of the [relevant] trademark, and does not apply to issues which are collateral to the infringement litigation").[5]

## II.  THE SUBPOENA IMPOSES AN UNDUE BURDEN

Wholly apart from its lack of relevance, the Subpoena imposes an undue burden on Mr. Fallon, which is a separate and independent ground for quashing it.  "To determine whether a subpoena imposes an undue burden, courts weigh the burden to the subpoenaed party against the value of the information to the serving party by considering factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Jam Indus.*, 2020 WL 4003280, at *3 (internal quotation omitted).  Where discovery from a nonparty is at issue, "expense and inconvenience may be considered," in addition to "whether [the discovery] is available from any other source." *Id.*; *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 WL 4242040, at *1 (S.D.N.Y. Sept. 6, 2019) (internal quotation omitted).

Here, these factors uniformly counsel in favor of granting the Motion.

---

[5]  To the extent Ripps and Cahen argue that the discovery they seek from Mr. Fallon is relevant to Yuga Labs' use of the BAYC Marks "in commerce," that argument also fails.  There is no dispute in the *Ripps* Litigation that Yuga Labs, as creator of the BAYC, used the BAYC Marks "in commerce" first and therefore has "priority of use" under the "standard test of [trademark] ownership." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219–20 (9th Cir.), *as modified*, 97 F.3d 1460 (9th Cir. 1996).

*First*, there is no dispute that the discovery sought from Mr. Fallon is equally available from Yuga Labs, a party to the *Ripps* Litigation. Indeed, Ripps and Cahen have sought this very discovery from Yuga and are presently engaged in motion practice to compel its production. Furthermore, as noted above, counsel for Mr. Fallon understands that Ripps and Cahen have obtained, or are in the process of obtaining, the same or similar discovery from Guy Oseary, who, as alleged in the *Real* Litigation, acted as Yuga's agent in connection with the sale and promotion of BAYC NFTs to celebrities. (Seshens Decl. ¶ 16.) Given Ripps and Cahen's ability to obtain the discovery they seek from Yuga and its alleged agent, the Subpoena imposes an undue burden on Mr. Fallon. *See* Fed. R. Civ. P. 26(b)(2)(C); *see also Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, 2020 WL 4700910, at *3 (S.D.N.Y. Aug. 13, 2020) (finding burden imposed by Rule 45 subpoena undue where discovery sought was limited in value and "substantially similar" to that sought from parties to the underlying action); *Alcon*, 2019 WL 4242040, at *2–*3 (same where "overbroad" subpoena sought discovery "obtain[able] . . . from [d]efendants in the underlying action").

*Second*, the Subpoena imposes an undue burden on Mr. Fallon because it fails to provide Mr. Fallon with "reasonable time" to comply in violation of Fed. R. Civ. P. 45(d)(3)(A)(i). The Subpoena, which was issued on February 24, 2023, allows only six business days (approximately ten total days) for Mr. Fallon to search for, collect, identify, review, and produce the multiple categories of documents requested. Federal courts have "consistently held that a period of ten days or less is an unreasonable amount of time to comply with a document subpoena." *Anstead v. Virginia Mason Med. Ctr.*, 2023 WL 34505, at *2 (W.D. Wash. Jan. 4, 2023) (collecting cases); *see also Brown v. Hendler*, 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011).

Accordingly, the time allotted for Mr. Fallon to comply with the Subpoena is presumptively unreasonable.[6]

*Third*, the Subpoena unduly burdens Mr. Fallon by requiring that he search for, collect, identify, review, and produce documents that are subject to the PSLRA discovery stay in the *Real* Litigation. One of the principal purposes of that stay is to avoid the situation where a federal securities plaintiff—who would not otherwise be able to meet the PSLRA's heightened pleading requirements—gains access to information through discovery at the state court level (by asserting securities claims there) and resuscitates a complaint otherwise subject to dismissal. *In re Cardinal Health*, 365 F. Supp. 2d 866, 872 n.6 (S.D. Ohio 2005). Although this purpose is most frequently framed as concerning the use of state court actions to circumvent the PSLRA, "courts have also [halted discovery] in federal proceedings related to a parallel PSLRA lawsuit subject to the automatic stay." *Barney v. Zimmer Biomet Holdings, Inc.*, 2018 WL 11407332, at *3 (N.D. Ind. Aug. 21, 2018) (citing *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2003 WL 22227945, at *2 (S.D.N.Y. Sept. 26, 2003)). Moreover, as courts in this district have recognized, the PSLRA "protect[s] defendants in actions such as this"—i.e., collateral state or federal proceedings in which protected discovery is sought—"from the burden and expense of premature discovery . . . whether from parties or nonparties" to the securities litigation. *ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*, 2003 WL 1877227, at *2 (S.D.N.Y. Apr. 9, 2003).

---

[6] To the extent Ripps and Cahen assert that the expedited timeline to comply with the Subpoena is a result of the upcoming March 20, 2023 deadline to file motions in the *Ripps* Litigation, such an assertion is unavailing. Ripps and Cahen have known about this deadline since the scheduling order was entered in October 2022 and have had ample opportunity to subpoena Mr. Fallon "well before the discovery deadline approached." *Donald J. Ulrich Assocs., Inc. v. Bill Forge Priv. Ltd.*, 2018 WL 6061083, at *3 (E.D. Mich. Nov. 20, 2018). This militates in favor of quashing the Subpoena. *See id.*; *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, 2020 WL 4700910, at *3 (S.D.N.Y. Aug. 13, 2020) (quashing subpoena where serving party had "ample time to properly serve [a nonparty] along with other parties, . . . but instead chose to do so only days before the [relevant deadline]").

Here, Ripps and Cahen admittedly are motivated by the allegations in the *Real* Litigation to seek the very discovery subject to a stay in that matter. (*See supra*, at n.4.) Enforcing the Subpoena thus would subject Mr. Fallon to an unreasonable and "impermissibl[e] burden" long before the disposition of any motion to dismiss in the *Real* Litigation, which is unlikely to happen for at least a year, if not longer. *In re Dot Hill Sys. Corp.*, 594 F. Supp. 2d 1150, 1166 (S.D. Cal. 2008). Given the substantial "overlap" between the securities issues in the *Real* Litigation and the discovery sought from Mr. Fallon in the *Ripps* Litigation, ordering Mr. Fallon to comply with the Subpoena would undermine the purposes of the PLSRA stay. *See id.* at 1165–66; *see also Buettgen v. Harless*, 2010 WL 2573463, at *2 (N.D. Tex. June 25, 2010) (stating that to permit parallel discovery would "circumvent[] . . . and . . . compromise[]" a district court's "jurisdiction to rule upon the motion to dismiss the Plaintiffs' federal securities claims filed in this case, before any discovery has been conducted"); *Leal v. Paramount Restaurants Grp., Inc.*, 2013 WL 500447, at *3 (D. Colo. Feb. 11, 2013) (indicating that courts should ensure parallel discovery does not "render[] the PSLRA's stay provision a nullity").

**III.   THE SUBPOENA IS PROCEDURALLY DEFICIENT**

Finally, the Subpoena should be quashed for the independent reason that it fails to comply with Fed. R. Civ. P. 45(a)(3)'s requirement that it be signed by an "attorney . . . authorized to practice in the issuing court." Fed. R. Civ. P. 45(a)(3). Mr. Tompros, the signatory of the Subpoena on behalf of Ripps and Cahen, apparently is neither admitted to practice law in New York, Vermont, or Connecticut, nor admitted to the bar of the Southern District of New York. Courts in this district and elsewhere have recognized that this defect alone renders a subpoena fatally deficient on its face. *See, e.g.*, *In re InterBank Funding Corp.*, 310 B.R. 238, 255 n.22 (Bankr. S.D.N.Y. 2004) (recognizing that an attorney not "admitted to practice before

this Court" is therefore "not qualified to act on behalf of the Court" by issuing a subpoena); *see also Burns v. Bank of Am.*, 2007 WL 1589437, at *7 (S.D.N.Y. June 4, 2007) (granting motion to quash subpoena that was "a nullity" under Rule 45(a)(3) because it was not issued by a properly admitted attorney); *Idelle Labs, Ltd. v. Reis*, 2014 WL 12577036, at *1 (S.D. Ohio Apr. 24, 2014) (quashing subpoena as procedurally defective in part because it was "issued by an attorney not authorized to practice in the Southern District of Ohio").

## CONCLUSION

For the foregoing reasons, James Fallon respectfully requests that the Court grant his Motion and quash the Subpoena.

Dated: New York, New York
March 6, 2023

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By: /s/ *Dana M. Seshens*
Dana M. Seshens
Daniel J. Schwartz
Adam M. Greene
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
dana.seshens@davispolk.com
daniel.schwartz@davispolk.com
adam.greene@davispolk.com

*Counsel to Nonparty James Fallon*